United States v. Singh, 17905. Good morning, Your Honors. Marisa Feldman on behalf of the Appellant at CJA Council. Your Honors, evidence of any prior bad acts or offenses which a defendant is not on trial for are arguably the most damaging and unfairly prejudicial evidence a jury may hear in a criminal trial. Clearly, the commission of a prior bad act is not proof in and of itself of the commission of the charged offense. Yet, such evidence often prompts the jury to more readily accept the government's theory that the accused is guilty. Your argument was that the prior incident was hearsay and not Rule 404, a bad act situation. I mean, you know, I thought that was the issue. The issue was whether it was properly admitted. Correct. Because it was hearsay. It was hearsay. Okay, then make that argument. That's the one we're interested in. Okay. That's the one you put in your brief. Correct. The government's argument in essence is that this is not hearsay. It's background. They say that it's background. That it's background. Right. The truth of the matter is it's quadruple hearsay. It's not even hearsay. It's not even double hearsay. It isn't hearsay if it can come in under an exception. I mean, it's hearsay, but it could be an exception, and one is background. One is intent. It could be to show intent. If it's not being offered for the truth of the matter asserted, but it's being offered to show what was in Mr. Singh's mind at the time of the current offense, then it can be permitted. So why wasn't this permitted in effect? I mean, Toledo testified, right? Well, I think that Toledo testified about what three other people said in a chain. It's kind of like telephone. Right. What the clerk said. But he also testified as to what he did on that earlier occasion, right? Toledo testified about his own acts. He just didn't repeat what other people had said. He did talk about what other people had told him, and it's true, but he also talked about things that he did on that day. Correct. So he talked about the stop that he made of the appellant, the defendant, in that earlier six months prior case. And so the out-of-court statements were used to explain why Toledo did what he did. They were the background. Otherwise, you wouldn't know why he did what he did. There would be no logic to it. Of course there'd be logic to it. There was absolutely no necessity for the jury to hear that Mr. Singh spoke to a clerk and showed a picture, and then the clerk called a tribal police officer who called a trooper who then called Toledo. All that Patrol Officer Toledo had to say is that he made a stop, he spoke to the defendant, this is what the defendant said, and he let him go. That was the issue that he should have testified to. To incorporate the quadruple hearsay into his testimony created undue prejudice that clearly would have confused any juror. It's not simply background, because the government's argument is not that it was background. The government makes several arguments in its opposition. One, that it proved knowledge and intent, and that it somehow gave explanation to the investigation. But there was no need to give explanation to the investigation. All that had to happen is the testimony needed to be simplified and not include items which could then affect the integrity of the process, the defendant's due process rights to cross-examine anybody. He could have cross-examined Toledo, but he wasn't able to cross-examine three other people that Toledo says he relied upon. I think that it's very interesting, I found, that in the government's opposition, they don't address the Ninth Circuit case, which is in our brief. And we would ask that the Court consider that as instructive on the issues before this Court. This is plain error review in connection with this particular issue. Yes, and there is plain error here. There is absolutely plain error in allowing the trooper Toledo to testify about the statements and the circumstances of all of these additional parties that were never subject to cross-examination. And although it's not clearly pointed out in the brief, but it's pointed out in some of the case law, certainly those people might have been able to be brought in. They were government, right? We have a tribal police officer, we have another trooper in the area. The government didn't bring them in. Instead, they chose to introduce this as a hearsay, depriving the defendant of the right to cross-examine. Why is that not, Ms. Feldman, why is that not obviated by the district court's instruction, limiting instruction, particularly in the context of our examining whether it was harmless error? Because I don't believe that the court's limiting instruction gave the jury the information that it needed to disregard the hearsay upon hearsay. Well, it said the jury couldn't consider that as any proof that the defendant did what he was charged with doing. But under the circumstances and the way the evidence came out and the way it was presented, it's unlikely that the jury would follow such an instruction. This was, at its core, I would argue that this was proof of propensity. That's really what the government was trying to show. They had a very weak case. And what they did was they bootstrapped their very weak case with a propensity argument, trying to show that there was knowledge and intent. But in order to show knowledge and intent, the government must identify a similarity or a connection between the facts. Here we have two different locations, pickup locations. We have unidentified people. We have hearsay statements. And what the government is really trying to do was show if he did it then, he's going to do it again. And that's not appropriate due process. And I don't believe that the judge's limiting instruction would have been sufficient to override that in a juror's mind. And it's not harmless error? It's not harmless error because the whole issue was knowledge. Did he know what he was doing? Did he know that he was picking up undocumented Indian nationals? But you can correct me if you think I'm wrong, that Mr. Singh himself made admissions that echoed the statements made by, I guess, Agent Vogelzang. Well, Mr. Singh's statements somewhat echoed, but the testimony of Trooper Toledo and the way it was presented clearly showed and implied, and as the government argued, that he was lying.  That was the government's argument. Mr. Singh is going to always tell you what he can, he's going to deny what he can deny and admit what he has to admit. That was the government's argument in closing. And so what they really did when they introduced this hearsay evidence was they tried to show that what he actually said to Trooper Toledo was really undermined by his activity through the hearsay statements of the other individuals. Thank you very much. You have reserved two minutes for rebuttal. Thank you very much, Your Honor. Good morning, Your Honors. Joseph Giovanetti for the government. May it please the Court. Your Honors, the testimony of Officer Special Agent Toledo was admitted, or his statements regarding what Vogelzang told him was admitted not for the truth of the matter asserted, but rather to show why Special Agent Toledo did what he did on that night in December of 2015 when he stopped Singh and when he questioned him regarding his reason for being at the border on that particular night. Couldn't he have provided that testimony without all the background? I think he could have, Your Honor, yes. I think the default position should be that the government has a right to present the case as it so chooses, to give a narrative to the jury, to orient the jury, and allow them to understand the context in which a law enforcement citizen interaction occurred. I think that's especially relevant here where you're talking about an agency, Border Patrol, that the average lay juror is going to be unfamiliar with. They're going to be unfamiliar with how those interactions happen, under what circumstances they happen. And you have specific question and answer between Agent Toledo and Singh on that night in December of 2015 that are going to be unfamiliar to a lay juror. Ask questions about where he was born or what his nationality is. That's different than, for example, your average traffic stop. Hello? Hello, Your Honor, yes. Why didn't the government call the various witnesses to provide that background instead of relaying it through hearsay on hearsay? Your Honor, that was an option. It was an option, right? It was an option, yes. It was an option. And, you know, if there had been a motion in limine, if there had been an objection, then perhaps that's what the government would have done here. I would point out, Your Honor, that this whole incident that happened six months prior to the incident for which Mr. Singh was arrested and charged was being entered as 404B evidence. So I think had the government called tribal police officers, had they called Special Agent Vogelson, had they called the clerk from the Comfort Inn, then all of a sudden you would have had multiple witnesses, including witnesses from an additional law enforcement agency, tribal police, at trial. And this incident that happened some six months before the incident for which Mr. Singh was being charged would become a trial within a trial. Yeah, and it explains probably the course you chose. And I guess in your favor was that there was no motion in limine and there was no objection. There was. There was not, Your Honor. So you were just proceeding with Toledo and that was the way, you know, you saw no real need and certainly couldn't discern one from the defendant as to proceed in any other way. Certainly, Your Honor. And I think to that as well I would add the fact that the defense in this case had every opportunity to make a motion in limine to object. In the government's own motion in limine in which they were proffering this 404B evidence about what happened in December of 2015, the stop that happened six months earlier, the government outlined the sequence of events almost precisely or almost exactly how they came in at trial. And that's in- We also had a witness list that did not identify Officer Agent Vogelzang as a witness. That's true, Your Honor. Yes. And you also, even in the manner in which the question was asked, broadcast or forecast to the defense that the government was asking Toledo to convey information that was conveyed to him. I think that was the exact question. What information, if any, was conveyed to you from Vogelzang when he made that phone call during a shift switch at approximately 11 p.m. on that night? So, Your Honor, I think the other important thing is that even if the court were to consider the statements, the out-of-court statements from Vogelzang, as hearsay, there is no prejudice here for the exact reason that Your Honor pointed out during the appellant's arguments. Those statements were echoed by Mr. Singh himself in his own statements. He explains that he came up to the border as a favor for his brother to pick up two women. He finds out that they are in the country illegally, that they're illegal immigrants, that he doesn't want anything to do with them. So, he turns around and he's headed back to New York City. And I think one point that it seems to me that the appellant misses is exactly the reason why or how the government argued this 404B evidence at trial. And that's it. It wasn't for a propensity. It wasn't to show that Mr. Singh had committed the same crime for which he had been charged some six months earlier. In fact, in the government's rebuttal summation, they say, in December 2015, during that incident, Mr. Singh learned that if he were to come to the border to do a favor for a friend by picking somebody up, then the person he's picking up is most likely to be in the country illegally. And therefore, the purpose for this whole incident, for entering this whole incident, is to show that he learned, he had every opportunity to learn in December 2015 that if you come to the border and there's a set of circumstances to pick somebody up, you run a grave risk of picking up an illegal immigrant. And then when he goes and does it a second time six months later, then he ignored the lesson that he should have learned in December of 2015. It's not just background. It's 404B. Well, again, I think that there is a conflating on the part of the defense and on the part of the appellant as to the hearsay itself. The hearsay is background. But, again, the hearsay is in the context of this 404B. I don't have direct testimony about what his conversation is saying. It wasn't hearsay. No. No. It's a statement of party opponent. It's a statement of Mr. Singh. Correct. Yes, Your Honor. Yes. And the government concedes error, at least with respect to the financial information condition. Is that correct? That's correct, Your Honor. With regard to the sentencing, the supervised release, we concede that that's a special, that the financial information condition is a special condition. For that specific issue. For that limited purpose, yes, Your Honor, to allow the court to orally pronounce that aspect of the supervised release, which is not part and parcel of a sentencing. Is there anything else that you have? No, Your Honor. Thank you. You're welcome. Thank you, Your Honors. You know, the government argues that it may present a case as it so chooses, but it can't present a case it chooses that denies due process to the defendant. So when the government looks at a witness and decides what the witness should or shouldn't testify about, they're not held to any standards. The government is held to a higher standard in determining what is appropriate evidence and what is not appropriate evidence, because the government is not supposed to try a case to violate the due process of the defendant. They're supposed to try a fair and . . . I understand that, but you're . . . The government just outlined a series of warning signs that were provided to the defense in the form of a 404B letter, in the form of a witness list that did not include Mr. or Agent Vogelzang and so on. There was no objection. There was no outcry. There was nothing from the defense. And so, one argument could be that the defendant here got his due process concerns addressed by the fact that the government submitted a 404B letter outlining exactly what they were going to present to the jury, without objection. Well, I believe that the . . . My recollection of the 404B letter and the motion and the opposition, it talked about that Officer Toledo was going to testify about an interaction. I don't believe that that motion outlined that Toledo was going to testify that Vogelzang said that a clerk at a hotel contacted a tribal police officer who contacted Vogelzang, and all of the conversations and all of the statements that were made in that context. It didn't specify any of that. It was, I believe, a much more general application, and I think that it's part of the appendix in this case, and the Court is free to look at it and analyze it. But that's really the issue, that is the government allowed to simply, when it's providing 403B evidence, simply rely on hearsay upon hearsay? How far back can we go to determine what it's going to do and how it's going to present it? Thank you very much. Thank you very much, Your Honor. We'll reserve the decision.